Filed 10/28/13  Mack v. City of Hawthorne CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MARJORIE MACK et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>CITY OF HAWTHORNE,<br><br>    Defendant and Respondent. | B244103<br><br>(Los Angeles County<br>Super. Ct. No. BC469941) |

APPEAL from orders and a judgment of the Superior Court of Los Angeles County, Elizabeth Allen White, Judge.  Reversed.

Law Offices of David Peter Cwiklo and David Peter Cwiklo for Plaintiffs and Appellants Majorie Mack and Shannon-Joy Gossett.

Liebert Cassidy Whitmore, Jeffrey C. Freedman and Meredith G. Karasch, for Defendant and Respondent City of Hawthorne.

_____

This is an appeal after the trial court sustained a demurrer without leave to amend. Plaintiffs Majorie Mack and Shannon-Joy Gossett sued their former employer, the City of Hawthorne (Hawthorne).[1] Their operative second amended complaint alleged the following causes of action: (1st) wrongful termination in violation of the anti-retaliation provisions of the Fair Employment and Housing Act (FEHA; Govt. Code, § 12940, subd. (h)); (2nd) wrongful termination based on racial discrimination in violation of the FEHA; and (3rd) wrongful termination in violation of Labor Code section 432.7 et seq. Hawthorne filed a demurrer challenging all three causes of action. The trial court sustained Hawthorne's demurrer to the first and third causes of action, and overruled Hawthorne's demurrer as to the second cause of action. Plaintiffs dismissed their second cause of action with prejudice and filed the current appeal.[2] We reverse.

---

[1]     Except as individually noted for clarity of the alleged facts, we hereafter refer to Mack and Gossett collectively as Plaintiffs. Plaintiffs also sued Hawthorne in a previous action based on alleged violations of the FEHA during their employment. They lost in that case based on rulings in the context of a motion for summary adjudication of issues and nonsuit at trial. Division Five of our court recently affirmed the judgment in favor of Hawthorne in the previous action. (*Mack v. City of Hawthorne* (July 5, 2013, B238094) [nonpub. opn.].) We hereafter refer to Plaintiffs' earlier action as *Mack/Gossett I*.

[2]     We construe the trial court's ruling on Hawthorne's demurrer as to Plaintiffs' first and third causes of action, coupled with Plaintiffs' subsequent dismissal of their second cause of action with prejudice, to constitute a final judgment. For reasons which we do not understand, Hawthorne objected to a proposed judgment of dismissal submitted by Plaintiffs. The proposed judgment document incorporated the trial court's ruling on the city's demurrer to the first and third causes of action and Plaintiffs' ensuing dismissal of their second cause of action. Although Plaintiffs' request for dismissal expressly stated that they were dismissing only their second cause of action, Hawthorne's objection to the entry of the proposed judgment suggested to the trial court that Plaintiffs had dismissed their action in its entirety, meaning, said Hawthorne, that there was no remaining action in which to enter a final judgment. The trial court "sustained" Hawthorne's objection to Plaintiffs' proposed judgment, and, thus, no formal, final judgment document was ever put in place. Because we have determined that there is a final judgment in this action in substance, we summarily reject Hawthorne's contention (raised in its respondent's brief) that we should dismiss Plaintiffs' appeal on the ground that no final appealable judgment exists.

FACTS

*Background*

As always in the context of reviewing a demurrer we consider the facts alleged in the operative complaint to be true. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) We may also consider matters that are judicially noticed. (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591.) Examined in the light of these rules, these are the facts in this case.

Hawthorne hired Mack in April 1999. Hawthorne hired Gossett in March 2002. Both eventually ended up working in the city's Housing Department, which administers a federal housing subsidy program commonly known as "Section 8." Mack worked as a "Housing Specialist." Gossett worked as a "Section 8 Housing Inspector."

In January 2006, Hawthorne's city manager, Jag Pathirana, and the director of the city's Housing Department, Hamid Pournamdari, fired Gossett after she exercised her California Family Rights Act medical leave rights and went out on an approved medical leave for treatment of lupus. Gossett successfully appealed her termination, and, in July 2006, Pathirana and Pournamdari "were forced to return Gossett back to work."[3]

In the same general time frame (May 2006), Pathirana fired Rose McKinney, an employee in the city's planning department. Shortly thereafter, McKinney filed a race, sex and retaliation charge with the Equal Employment Opportunity Commission (EEOC). McKinney also initiated a civil service proceeding to challenge her firing. In September 2007, McKinney filed a lawsuit against Hawthorne for race and gender discrimination, harassment and retaliation. Mack and Gossett supported McKinney's claims.

In December 2008, McKinney identified Mack and Gossett (and others) in a joint list of trial witnesses in her federal court action. In March 2009, "[i]n response to Mack [and] Gossett's participation" in the McKinney matters, Pathirana "approved" the filing

---

[3]     Although not expressly alleged in plaintiffs' operative pleading, the appeal was apparently heard by the city's civil service commission.

of felony criminal complaint against Mack and Gossett premised on a May 2008 city investigation of the Housing Department.[4]

On March 26, 2009, Hawthorne suspended Mack and Gossett indefinitely, without pay and benefits, based on the filing of the felony criminal complaint. Hawthorne's notice of suspension stated: "While any criminal defendant is presumed innocent until proven guilty, *based on the filing of these charges* by the District Attorney, *it must be assumed there are reasonable grounds to warrant your immediate suspension without pay. . . .* This suspension will remain in effect *pending resolution of these criminal charge . . . .*"

On March 26, 2010, Plaintiffs filed a lawsuit against Hawthorne alleging claims for wrongful job action (i.e., their suspension) in violation of the FEHA based on racial discrimination, harassment and retaliation. (*Mack/Gossett I*; see footnote 1, *ante*.)

On August 5, 2010, while the *Mack-Gossett I* litigation was still ongoing, the Los Angeles Superior Court dismissed all criminal charges against Mack and Gossett for lack of evidence. On August 9, 2010, Mack and Gossett demanded reinstatement pursuant to the terms and conditions of Hawthorne's March 26, 2009 notice of suspension, i.e., that the suspensions would remain in effect pending resolution of their criminal case. Hawthorne refused to reinstate either employee. On August 11, 2010, Mack and Gossett demanded reinstatement a second time. Again, Hawthorne refused. On August 18, 2010, Mack and Gossett demanded reinstatement a third time. Hawthorne refused a third time.

On October 21, 2010, Hawthorne fired Mack. On January 25, 2011, Hawthorne fired Gossett. Hawthorne's decisions to terminate Mack and Gossett were unlawfully motivated in whole or in part upon: (1) Mack and Gossett's participation in "protected

---

[4] We pause for an aside. The District Attorney, of course, files felony criminal complaints. We construe Plaintiffs' allegation that Hawthorne officials "approved" the filing of a criminal case to mean that those officials reported wrongdoing, and provided information, all of which resulted in the District Attorney's act of filing a criminal case. We know from Division Five's opinion in *Mack/Gossett I* that Plaintiffs were accused of accepting bribes (gift cards) in exchange for moving the names of applicants upward on an official list of persons waiting for Section 8 housing to become available.

activity," including their prosecution of the *Mack-Gossett I* wrongful suspension lawsuit predicated upon their participation in "protected activity" in the underlying McKinney matters; and (2) the filing of a felony criminal complaint, notwithstanding that Mack and Gossett had been "fully exonerated . . . of any criminal wrongdoing."

*The Litigation*

Plaintiffs filed their operative second amended complaint in March 2012. In April 2012, Hawthorne filed a demurrer to all three causes of action alleged in the pleading. On June 6, 2012, the trial court sustained Hawthorne's demurrer to Plaintiffs' first cause of action for wrongful termination in violation of the FEHA's anti-retaliation provisions, and third cause action for wrongful termination in violation of Labor Code section 432.7 et seq., and overruled Hawthorne's demurrer to the second cause of action for wrongful termination based on racial discrimination in violation of the FEHA. On August 27, 2012, Plaintiffs dismissed their second cause of action with prejudice. Plaintiffs filed a timely notice of appeal following the dismissal of their second cause of action.

## DISCUSSION

### I. Standard of Review

Our task on appeal is to determine whether the alleged facts are sufficient to state a cause of action. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) Our review is de novo, meaning we independently decide whether the complaint is legally sufficient to state a cause of action. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)

### II. Plaintiffs' Cause of Action for Wrongful Termination in Violation of the FEHA's Anti-Retaliation Provisions

Hawthorne's demurrer to Plaintiffs' first cause of action for wrongful termination in violation of the FEHA's anti-retaliation provisions argued the cause of action failed as a matter of law because Plaintiffs "failed to exhaust their administrative remedies." Specifically, Hawthorne argued the Plaintiffs' administrative claim to the Department of Fair Employment and Housing (DFEH) did not include the retaliation-based claim that they asserted in their complaint. Hawthorne argued the Plaintiffs' current court claim

5

that they were *terminated* for engaging in "protected activity" — namely, the filing their earlier "wrongful suspension" complaint in *Mack/Gossett I* — was not identified in their DFEH administrative claim preceding the filing of their current court case for wrongful termination. In sustaining Hawthorne's demurrer to Plaintiffs' first cause of action, the trial court agreed. We do not.

Exhaustion of the DFEH administrative claim process is a jurisdictional requirement to filing a complaint under the FEHA. (*Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1724.) The purpose of the claim filing requirement is to ensure that all interested parties have notice of the claimant's allegations, the idea being that the claims may be properly investigated in the administrative arena before judicial action is commenced. (See *Cole v. Antelope Valley Union High School Dist.* (1996) 47 Cal.App.4th 1505, 1513-1515.)

As the trial court correctly noted, the basis of Plaintiffs' retaliation claim in their current lawsuit is that Hawthorne *terminated* their employment in retaliation for filing and litigating *Mack/Gossett I*. The issue, therefore, is whether Plaintiffs' DFEH claim forms may be construed to encompass such a wrongful termination claim.

A DFEH claim form is not a formal pleading. The purpose of a DFEH claim is to trigger the investigatory and conciliatory procedures of the DFEH, not to limit a person's access to the courts. (*Saavedra v. Orange County Consolidated Transportation Etc. Agency* (1992) 11 Cal.App.4th 824, 827.) Accordingly, California follows federal law standards which have adopted a "like or reasonably related" evaluation standard when juxtaposing a DFEH claim form and subsequent complaint, so as not to erect a "needless procedural barrier" to the complaint. (*Sandhu v. Lockheed Missiles & Space Co.* (1994) 26 Cal.App.4th 846, 859, citing *Oubichon v. North American Rockwell Corporation* (9th Cir. 1973) 482 F.2d 569, 571.) Basically, if an investigation of a DFEH claim form would uncover a claim included in a subsequent complaint, the claim may be included in the complaint, notwithstanding that the claim was not pristinely stated in the DFEH claim. (See *Okoli v. Lockheed Technical Operations Co.* (1995) 36 Cal.App.4th 1607, 1614-1615.) As explained in *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243,

6

267: """"The specific words of [a DFEH claim form] need not presage with literary exactitude the judicial pleadings which may follow.""""

Here, Plaintiffs' DFEH claim forms showed they were claiming "termination" and "retaliation." The DFEH claim forms stated that Plaintiffs' termination and retaliation claims were "based upon" a list of items, one of which was their complaint in *Mack/Gossett I*. In ruling on Hawthorne's demurrer to Plaintiffs' pleading in the current wrongful termination action, the trial court appears to have construed this "based upon" language in the DFEH claim forms to mean based upon the facts alleged in the complaint in *Mack/Gossett I* (i.e., based upon helping McKinney in her matters against the city), not based upon the filing of the complaint itself in *Mack/Gossett I*. In other words, the trial court construed the words "based upon" to be language that incorporated the allegations in Plaintiffs' complaint in *Mack/Gossett I*, not the act of filing the complaint. The court concluded: "As such, the alleged retaliation [in Plaintiffs' complaint] in violation of FEHA for filing [*Mack/Gossett I*] . . . was not included as part of the DFEH [claim]."

Plaintiffs argue the "based upon" language in their DFEH claim forms should be construed to mean based upon the *filing* of the earlier complaint in *Mack/Gossett I*, not merely based upon an incorporation of the facts alleged in their earlier complaint. We agree.

Plaintiffs' DFEH claims stated they were terminated as an act of retaliation, and listed the earlier complaint in *Mack/Gossett I* as being involved. We are satisfied that Hawthorne, and DFEH too, could have understood and investigated the retaliation claim in the DFEH claims broadly enough to find they claimed that they were terminated for litigating the earlier lawsuit, not merely based on the facts alleged in the earlier lawsuit. We disagree with the trial court that Hawthorne, and DFEH too, could not have so understood and investigated the DFEH claims. This is a pleadings case, and we find the pleadings (incorporating the Plaintiffs's DFEH claims as they do) are sufficient to survive the demurrer stage.

**III.    Plaintiffs' Cause of Action for Wrongful Termination in Violation of Labor Code Section 432.7 et seq.**

Hawthorne's demurrer to Plaintiffs' third cause of action for wrongful termination in violation of Labor Code section 432.7 et seq. argued the Plaintiffs failed to state a valid cause of action as a matter of law because they failed to comply with the tort claims filing requirements under Government Code section 910 et seq.[5]  The trial court agreed, ruling as follows:  "Here, the Government Claim filed with the City did not fairly reflect facts supporting a theory that Plaintiffs were [terminated] based on any record of arrest . . . that did not result in conviction.  At most, the Claim reflects that [the city] was responsible for the criminal prosecution against Plaintiffs . . . , but there is no claim of termination arising from those criminal prosecutions."  Again, we find the trial court required too much specificity of a claim form, here a Government Code claim form.

A Government Code claim form must show the following: (1) the name and address of the claimant; (2) the date and place of the accident or event out of which gave rise to the claim; (3) a *general description* of the injury, damage or loss; (4) the names of the public employees causing the injury, damage or loss; and (5) the amount of the claim if it totals less than $10,000.  (Govt. Code, § 910.)  The purposes of a Government Code claim are multi-fold.  A claim may provide the public entity with information to enable it to perform an adequate investigation of the claim, and if appropriate, settle it without the expense of litigation.  (*Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441, 446 (*Stockett*).)  A claim may inform the public entity of potential liability for the purpose of budgeting.  (*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1776 (*Munoz*).)

---

[5]    Labor Code section 432.7, subdivision (a), provides:  "No employer, whether a public agency or private individual or corporation, shall . . .  utilize, as a factor in determining any condition of employment including hiring, promotion [or] termination, . . .  any record of arrest or detention that did not result in conviction . . . ."  Plaintiffs second amended complaint alleged:  "Pursuant to section 432.7 et seq., [Hawthorne] was not allowed to use as a factor in determining any condition of Mack and Gossett's continued city employment any arrest . . . record that did not result in conviction."

Although it is true that a theory of liability not included in a Government Code claim may not be maintained in a subsequent civil action (*Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407, 1426), the claim filing statutes are not designed to defeat meritorious lawsuits when a claim's purposes have been satisfied. (*Stockett, supra*, 34 Cal.4th at p. 446.) Thus, a claim is not required to be technically perfect; it need only substantially comply with the statutory requirements. (See, e.g., *Connelly v. County of Fresno* (2006) 146 Cal.App.4th 28, 38.) In addition, a claim form is construed liberally; the former rule of strict and literal compliance with the Government Code claims filing statutes has now "*disappeared from California law*." (Cf. *Munoz, supra*, 33 Cal.App.4th at p. 1778 [issue in context of petition for relief from claims filing statutes' procedural requirements].)

Hawthorne's demurrer argued the Plaintiffs' cause of action based on Labor Code section 432.7 was barred because their Government Code claim form did not expressly contain the words "Labor Code section 432.7." In sustaining Hawthorne's demurrer, the trial court essentially agreed that reference to the particular code section upon which a cause of action is based in required to be included in a Government Code claim form. We do not agree. The Government Code claims filing statutes require a claim to include a "general description" of the claimant's injury, damage or loss. (Govt. Code, § 910, subd. (d).)

Here, Plaintiffs' Government Code claims substantially complied with the claims filing statutes because they substantially complied with the general description standard. The claims were sufficient to put the city on notice of potential liabilities, and of the nature of Plaintiffs' claims, such that a meaningful investigation could be undertaken. In our view, the trial court required too much when it demanded that Plaintiffs' Government Code claim include a specific reference to the particular code section upon which their subsequent cause of action rested. Plaintiffs claim form was sufficient in that it gave notice that the basis for their claim was that city terminated them based upon the criminal felony prosecution. If Hawthorne has in mind a statute which reads, or a case which holds, that a plaintiff cannot maintain a civil action based on a particular statute (here, e.g., Labor Code section 432.7 et seq.) unless the plaintiff's prerequisite

9

Government Code claim form expressly referenced the particular statute, Hawthorne has not directed us to such legal authority.

## IV.　The Orders on Hawthorne's Motions to Strike

Plaintiffs filed a first amended complaint in November 2011. Hawthorne filed a motion to strike pursuant to Code of Civil Procedure section 436, arguing that various allegations in the pleading concerned matters that were already the subject of litigation in *Mack/Gossett I*. The trial court agreed, and, on March 1, 2012, entered an order striking specified parts of the first amended complaint. Plaintiffs then filed their operative second amended complaint in March 2012. In addition to filing a demurrer (*ante*), Hawthorne filed a motion to strike pursuant to Code of Civil Procedure section 436, arguing that various allegations in the pleading concerned matters already the subject of litigation in *Mack/Gossett I*. Again, the trial court agreed and, on June 6, 2012 (the same date it ruled upon Hawthorne's demurrer), the court entered an order striking various, specified parts in the second amended complaint, including allegations dealing with Plaintiffs' third cause of action for violation of Labor Code section 432.7 et seq., in light of the court's ruling on the demurrer to the third cause of action. On appeal, Plaintiffs contend the court should not have stricken the parts of their pleadings which it did. We disagree in part, and agree in part.

As a preliminary matter, we summarily reject Hawthorne's technical contention that our court should not review the trial court's orders on the city's motions to dismiss (entered on March 1, 2012 as to Plaintiffs' first amended complaint, and on June 6, 2012 as to Plaintiffs' second amended complaint) because Plaintiffs' notice of appeal did not expressly refer to such orders. Plaintiffs appealed from a final judgment in their action. On appeal from a final judgment in an action, the reviewing court may review any intermediate, nonappealable ruling, order, or decision which involve the merits or necessarily affects the judgment. (See Code of Civ. Proc., § 906.)

On the merits, we review the trial court's decision to strike all of part of a pleading pursuant to Code of Civil Procedure section 436 under the abuse of discretion standard. (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1282.) A trial court abuses

10

its judicial discretion when it renders a decision that exceeds the bounds of reason, all of the circumstances before it being considered.  (*Ibid*.)  Here, the trial court did not abuse its discretion in striking matters that were the subject of litigation in *Mack/Gossett I*.  As we understand the record, Plaintiffs' theory in *Mack/Gossett I* was that they suffered adverse job actions for assisting their co-worker McKinney in her discrimination and harassment matters; and their theory in their current action is that they were terminated for filing and litigating *Mack/Gossett I*.  It was not unreasonable for the trial court in Plainitffs' current action to strike matters addressed in *Mack/Gossett I*, viz., Hawthorne's alleged wrongful pre-termination conduct in retaliation for helping McKinney.  In summary, Plaintiffs may in their current case pursue claims for wrongful termination based on filing and litigating *Mack/Gossett I*., but not claims for wrongful pre-termination acts that were litigated in *Mack/Gossett I*.

### DISPOSITION

The judgment is reversed.  Appellant's are awarded costs on appeal.


BIGELOW, P. J.

We concur:


RUBIN, J.


FLIER, J.


11